UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BRUNO W. SCHMIDT, CHARLENE O. SCHMIDT, and STEVENS COUNTY WASHINGTON,<br><br>　　　　　　　Defendants.<br><br>BRUNO W. SCHMIDT and CHARLENE O. SCHMIDT,<br><br>　　　　　　　Counterclaimants,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　Counterdefendant. | NO: 2:14-CV-0237-TOR<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

BEFORE THE COURT are the parties' cross Motions for Summary Judgment (ECF Nos. 60, 61). These matters were heard with oral argument on October 20, 2016. Yen J. Tran and Rika Valdman appeared on behalf of the Government. Defendants Bruno W. Schmidt and Charlene O. Schmidt (the "Schmidts") appeared *pro se*. The Court has reviewed the briefing and the record and files herein, considered the parties' arguments and is fully informed.

## BACKGROUND

The Government initiated this action on July 22, 2014. ECF No. 1. The Complaint contained two claims: (1) to reduce federal tax assessments to judgment against the Schmidts; and (2) to foreclose federal tax liens encumbering the Schmidts' property in Stevens County, Washington. *Id.*

On December 22, 2014, the Schmidts filed a bankruptcy petition under Chapter 7 in Bankruptcy Court for the Eastern District of Washington. *See* Bankr. E.D. Wash. Case No. 14-04487-FPC-7, ECF No. 1. On January 9, 2015, the Court stayed this case pursuant to the automatic stay provision, 11 U.S.C. § 362. *See* ECF No. 16. On April 1, 2015, the Bankruptcy Court entered a discharge for the Schmidts, thus lifting the automatic stay. Bankr. E.D. Wash. Case No. 14-04487-FPC7, ECF No. 17, 20; *see* 11 U.S.C. § 362(c)(2)(C).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

On October 28, 2015, the Government filed its First Amended Complaint adding one cause of action: the fraud exception to bankruptcy discharge under 11 U.S.C. §523(a)(1)(C).  ECF No. 36; *see also* ECF No. 50.

On November 18, 2015, the Schmidts filed their First Amended Answer. ECF No. 39.  The Amended Answer asserted affirmative defenses and five counterclaims: (1) "time barred collection action," (2) "cloud upon & demand for quiet title," (3) "violation of bankruptcy injunction," (4) "unclean hands & filing of false documents," and (5) "personal tax debt was dischargeable." *Id.* at ¶¶ 182-204.

The Government filed a motion seeking dismissal of counterclaims (1), (3), (4), and (5), and an answer to counterclaim (2).  *See* ECF Nos. 48, 49.  The Government argued the Court lacked subject matter jurisdiction and the counterclaims failed to state a claim upon which relief may be granted.  ECF No. 49.  The Court dismissed counterclaims (1), (3), (4), and (5) with prejudice.  ECF No. 56 at 14.

On August 22, 2016, the Government and the Schmidts filed cross motions for summary judgment on the remaining claims.  ECF Nos. 60, 61.  The Government seeks to reduce to judgment the federal income tax assessments against the Schmidts and to collect through foreclosure of its liens against the Schmidts' real property.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

# FACTS[1]

From 1976 to 1997, Mr. and Mrs. Schmidt, a married couple, regularly filed their joint federal income tax returns, reported their taxable income, and paid their outstanding tax liabilities.  From 1979 to 1997, Mr. Schmidt worked for the Fireman's Fund Insurance Company.  In early 1998, Mr. Schmidt separated from this job at the Fireman's Fund and received severance pay totaling $62,928.44.  The Fireman's Fund issued a Form W-2, Wage and Tax Statement and withheld estimated taxes.  Additionally, Mr. Schmidt received a distribution from Redwood Credit Union totaling $154,446.50.  Redwood issued two Forms 1099-R, Statements for Recipients of Distributions from Pensions, Annuities, Retirement or Profit Sharing Plans, IRAs, and Insurance Contracts.  Mr. Schmidt also received a distribution from Northern Trust Company totaling $9,122.77, and another Form 1099-R.

The Schmidts failed to timely file any 1998 tax return with the IRS.  After some prodding by the IRS and some back and forth correspondence, the Schmidts submitted a Form 1040, U.S. Individual Income Tax Return for 1998, dated

---

[1] The facts material to the Court's resolution are not in dispute. They are gleaned from the Government's Statement of Material Facts, ECF No. 60-1, and the Defendants' Statement of Material Facts, ECF No. 64-1.

August 15, 2000.[2] The Schmidts' return reflected a filing status of married filing jointly, zero in gross income, zero tax liability, and claimed a refund of $21,988.27, which is the amount of estimated tax withheld by the Fireman's Fund.

On February 26, 2001, the IRS assessed a frivolous return penalty of $500 against the Schmidts. ECF No. 61 at 4-5.

On November 9, 2001, the IRS sent the Schmidts a Notice of Deficiency computing their 1998 tax liability for married, filing a joint return, in the amount of $72,720.00. The Notice also asserted a $13,866.50 penalty for failure to file a tax return and a $2,454.37 penalty for failure to pay estimated tax. The Schmidts never contested this determination, even though they were advised the last day to do so through a petition to the Tax Court was February 7, 2002.

On September 2, 2002, the IRS made timely assessments against the Schmidts for their unpaid federal income tax, penalties, interest and other statutory additions, onto their Master File Transaction ("MFT") 30 account. The IRS sent separate letters to each Mr. and Mrs. Schmidt detailing the assessments and providing the amount they jointly owed for the tax year 1998.

---

[2] The Schmidts filed a second, replacement return because of the IRS's apparent loss or destruction of the original return for a period of time.

The Schmidts filed multiple protests, while the IRS continued to make timely assessments for penalties and interest in 2003. Then, on June 11, 2003, the IRS recorded a Notice of Federal Tax Lien with the Stevens County Auditor against the Schmidts for their total unpaid 1998 joint income tax liability. ECF No. 60-14, Ex. 43

On July 31, 2009, Charlene Schmidt submitted a request for Innocent Spouse Relief. As a result, the IRS internally created separate mirrored module accounts (MFT 31) for the Schmidts. These accounts reflected the total assessments against the Schmidts for unpaid federal income taxes, penalties, interest, and other statutory additions, and the internal, joint MFT 30 account for the Schmidts was cleared to zero.

Thereafter, the IRS continued to make assessments for penalties and interest against the Schmidts, who continued to protest. On October 27, 2011, the IRS recorded two Notices of Federal Tax Lien Refile with the Stevens County Auditor, one for each Mr. Schmidt and Mrs. Schmidt. ECF No. 60-14, Exs. 44, 45.

On December 22, 2014, the Schmidts filed a voluntary Chapter 7 petition with the United States Bankruptcy Court for the Eastern District of Washington.[3]

---

[3] Case No. 14-04487-FPC7, ECF No.1.

On April 1, 2015, the Bankruptcy Court granted the Schmidts a discharge. ECF No. 60-14, Ex. 42.

Mr. Schmidt admits the income he received in 1998, which is represented in the W-2 and Forms 1099-R that he received, is taxable and he does not now dispute the IRS's assessment against him. However, the Schmidts claim that their tax debts were discharged in bankruptcy, the fraud exception to bankruptcy discharge does not apply to them, the tax liens were ineffective and the statute of limitations prevents the IRS from collecting the debt and foreclosing on their property.

The IRS seeks a judgment for the amount of taxes owing, excluding penalties and interest on penalties (extinguished by the bankruptcy) as of August 29, 2016 in the amount of $137,336.99, plus statutory interest thereafter. The IRS contends the fraud exception to bankruptcy prevents the discharge of this debt. Additionally, the IRS seeks to foreclose its perfected lien on the Schmidts' real property for the full amount owing, because irrespective of the fraud exception, the bankruptcy did not extinguish the IRS's secured interest in the property, which is $192,189.11 as of August 29, 2016, plus statutory interest thereafter.

//

//

//

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

# DISCUSSION

## A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by the factfinder at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [factfinder] could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a [factfinder] could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

### B. The Schmidts' Tax Liability

The Government seeks summary judgment against the Schmidts for their federal income tax liabilities for the taxable year 1998, including statutory accruals, but *excluding penalties and interest on penalties*. ECF No. 60 at 8. The Government concedes that the penalties and interest on penalties for 1998 were discharged in the Schmidts' bankruptcy case. *Id.* at 7. Accordingly, the Government seeks a judgment for $137,336.99 as of August 29, 2016, plus statutory accruals thereafter. *Id.* at 8; ECF No. 60-2 at 14.

"In an action to collect taxes, the government bears the initial burden of proof." *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir. 2004) (quoting *Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir 1997) (internal quotations and citation omitted). This burden can be met by presenting federal tax assessments. *See United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983). Absent contrary evidence, Certificates of Assessments and Payments ("Form 4340s") are highly probative and sufficient to establish that a tax assessment was properly made and notice and demand for payment were sent. *See, e.g.*, *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) ("Generally, courts have held that IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed under § 6203.").

Here, the IRS submitted Forms 4340 demonstrating the Schmidts' 1998 tax liability. ECF No. 60-2, Exs. A, B, and C. The IRS bolsters that evidence with the

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

Declaration of DeWayne Dave, a Bankruptcy Specialist with the IRS. *See* ECF No. 60-2 and attachments thereto. Although the IRS created separate mirrored accounts, because Mrs. Schmidt requested Innocent Spouse Relief, the Schmidts' joint and several liability remains unaffected. *See, e.g.*, *Minihan v. Commissioner*, 138 T.C. 1, 4 n.5 (2012) (noting "[m]irror[ed] accounts are currently created for . . . innocent spouse [cases]," and allow for pursuit of collection against one spouse while suspending it against the other—any payment collected from the non-requesting spouse would be credited to both mirrored accounts). Because the IRS's showing exceeds the minimal factual foundation necessary, the assessments receive a presumption of correctness and the burden of proof shifts to the Schmidts to demonstrate any error.

The Schmidts do not contest the calculation of the taxes and interest owing, they dispute the IRS's interpretation of the statute of limitations, the IRS's claimed exception to discharge in bankruptcy, and its internal record keeping.

1. Applicable Statute of Limitations

"Once the assessment of a tax has been made, the government may collect that tax 'by levy or by a proceeding in court' . . . 'within 10 years after the assessment of the tax.'" *United States v. Kollman*, 774 F.3d 592, 595 (9th Cir. 2014) (quoting 26 U.S.C. § 6502(a)(1)). Thus, the first item of business is to determine when the assessment of the tax was made. Here, the IRS sets forth

uncontroverted evidence that its assessment was made on September 2, 2002. ECF No. 60-1 at ¶ 35. Defendants admit this assessment, ECF No. 64-1 at ¶ 17, but contend the IRS's frivolous penalty assessment of $500 imposed on February 26, 2001, started the statute of limitations for collection. ECF Nos. 61 at 4, 9; 61-1. The IRS counters that the frivolous penalty assessment imposed pursuant to 26 U.S.C. § 6702, is not the tax that it is collecting in this action, it is a penalty from another subchapter of the tax code. ECF No. 62 at 3-4.

While the frivolous penalty assessment is "assessed and collected in the same manner as taxes", it does not represent the income taxes the Schmidts owe for 1998. *See* 26 U.S.C. § 6671(a). Nor is it an addition to the 1998 income tax, *see* 26 U.S.C. Chapter 68, subchapter B, but rather, it is a penalty imposed independently from the calculation of the taxes due and owing for 1998.

Accordingly, the September 2, 2002 assessment date is the beginning date for purpose of calculating the 10-year statute of limitations. Congress provided that the 10-year statute of limitations could be tolled (suspended) by certain events. Relevant here are two types of events, a Collections Due Process ("CDP") hearing and an Offer in Compromise ("OIC") proceeding.

If a CDP hearing is requested, "the running of any period of limitations under section 6502 (relating to collection after assessment) . . . shall be suspended for the period during which such hearing, and appeals therein, are pending." 26

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

U.S.C. § 6330(e)(1). The tolling period begins "on the date the IRS receives the taxpayer's written request for a CDP hearing." 26 C.F.R. § 301.6330-1(g)(2)(A-G1). There is no dispute that the Schmidts filed two requests for CDP hearings, tolling the periods from June 29, 2003 to November 29, 2003 and November 10, 2008 to August 9, 2009, totaling 425 days. ECF No. 60 at 9-10.

Additionally, the limitations period is tolled while an OIC "is pending with the [IRS]" and "if such offer is rejected, during the 30 days thereafter[.]" 26 U.S.C. § 6331(i)(5) and (k)(1). "[A]n offer in compromise is pending beginning on the date the Secretary accepts such offer for processing." 26 U.S.C. § 6331(k)(1). There is also no dispute that the Schmidts filed an OIC that tolled the period from December 9, 2011 to September 28, 2012, totaling 294 days. ECF No. 60 at 11.

Without any tolling, the statute of limitations would have run on September 2, 2012, ten years after the assessment of the tax. But here, because a total of 719 days were tolled, the statute of limitations for filing suit was extended to August 22, 2014. This action was timely because the IRS filed suit on July 22, 2014, one month before the statute of limitations expired.

   2. Exception From Discharge in Bankruptcy

In April 2015, the Schmidts received a general discharge in bankruptcy under 11 U.S.C. § 727. ECF No. 60-13, Ex. 42. Under a general discharge order,

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

most debts are automatically discharged, except the Bankruptcy Code "provides that a debtor may not discharge any tax debts 'with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.'" *Hawkins v. Franchise Tax Bd. of California*, 769 F.3d 662, 666 (9th Cir. 2014) (citing 11 U.S.C. § 523(a)(1)(C), emphasis omitted).

The IRS seeks summary judgment that the Schmidts filed a fraudulent return, thus, excepting their tax debt from discharge. ECF No. 60 at 12. The Government explains that it must demonstrate "(1) a knowing falsehood; (2) an intent to evade taxes; and (3) an underpayment of tax." ECF No. 60 at 12; *see also United States v. Parker*, 578 F. App'x 669, 671 (9th Cir. 2014) (citing *Considine v. United States*, 683 F.2d 1285, 1286 (9th Cir. 1982); and *In re Su*, 290 F.3d 1140, 1146 (9th Cir. 2002) (applying subjective standard focusing on the debtor's state of mind for § 523(a)(6)'s nondischargeability provision). The creditor is required to prove each of the elements of nondischargeability by a preponderance of the evidence. *See In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996) (*citing Grogan v. Garner*, 498 U.S. 279, 291 (1991)).

The IRS contends the Court can infer the Schmidts' fraudulent intent through circumstantial evidence from the various badges of fraud present in this case. ECF No. 60 at 13-18. The Schmidts dispute any fraud on their part, explaining the tortured history of this case and supporting their position with a

plethora of documents, correspondence and proffered testimony. At summary judgment, the Court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. at 378, and does not make credibility determinations, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. Viewing the evidence in the light most favorable to the Schmidts, the Court cannot find the necessary fraudulent intent to grant the IRS's motion. Accordingly, the IRS's motion for summary judgment will be denied on this issue.

### 3. Discrepancies in the IRS's Internal Paperwork

The Schmidts cite to a number of mistakes in the IRS's internal paperwork. None of the mistaken entries are material to the issues before the Court. Accordingly, but for the outstanding issue regarding dischargability for which a trial is necessary, the IRS is otherwise entitled to partial summary judgment.[4]

//

---

[4] Mrs. Schmidt continues to assert her innocent spouse defense. The IRS denied her innocent spouse status and she did not appeal to the Tax Court. 26 U.S.C. § 6015(e). Since Mrs. Schmidt did not pay the tax and file a refund suit in the district court, that issue is not properly before this Court. *See* 26 U.S.C. §§ 7422, 6015(e)(3).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 14

## C. Whether the Government is Entitled to Foreclose

The IRS seeks to foreclose its perfected lien on the Schmidts' real property for the full amount owing, $192,189.11 as of August 29, 2016, plus statutory interest thereafter.[5]  The Schmidts contend the liens on their property were released and extinguished as of October 3, 2012.  ECF No. 61 at 14.

The parties agree that on June 11, 2003, the IRS recorded a Notice of Federal Tax Lien with the Stevens County Auditor for the Schmidts unpaid 1998 income tax liability.  ECF Nos. 60-1 at ¶ 71; 64-1 at ¶ 46; 60-14 Ex. 43.  The parties also agree that the IRS recorded two Notices of Federal Tax Lien Refile with the Stevens County Auditor, one for each of the Schmidts for the full amount of their unpaid 1998 income tax liability.  ECF Nos. 60-1 at ¶ 72; 64-1 at ¶ 47 (preserving challenge as to whether the refiles were effective because they were

---

[5] Upon assessment, the law creates a lien in favor of the United States on all real and personal property belonging to the taxpayer, 26 U.S.C. §§ 6321.  *See U.S. By & Through I.R.S. v. McDermott*, 507 U.S. 447, 448 (1993).  Perfection of a lien is the filing of notice as to the identity of the lienor, the property subject to the lien and the amount thereof.  *See id.* at 449.  Perfection concerns priority of competing liens, as "the first in time is the first in right."  *Id*. (citation omitted).  There are no competing liens in this case.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 15

associated with MFT 31 accounts, not the original MFT 30 account); 60-14 Exs. 44, 45.

The Schmidts point to four letters and notices of federal tax liens sent to them in October and November 2011, contending that these liens expired on their own. ECF Nos. 61 at 13-15; 61-4 (Ex. D); 61-5 (Ex. E); 61-6 (Ex. F); 61-7 (Ex. G). For whatever reason and maybe because the IRS discovered its mistake in preparing these documents, they were never filed with the Stevens County Auditor. The Schmidts acknowledge as much. ECF No. 61-9 (Ex. J). Consequently, these documents bear no legal significance, they were not recorded.

Inexplicably and also without legal significance, the IRS filed a series of revocations of releases of federal tax liens. But, because there was never a release of lien filed, there was never anything to revoke. *See* ECF No. 60-14, Exs. 46 (revocation of release), 47 (same), 48 (same), 49 (revocation of revocation of release), 50 (same), 51 (same), 52 (corrected revocation of revocation of release), 53 (same), and 54 (same). Since the liens were never released, any revocation of an unidentified release of lien was ineffectual.

The first lien that was in fact filed would have expired on its own according to its limiting language. ECF No. 60-14, Ex. 43 ("unless notice of the lien is refiled by the date given in column (e) [10/2/2012], this notice shall, on the day following such date, operate as a certificate of release. . ."). But that automatic lien

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16

release never occurred because the IRS timely filed (October 27, 2011) two Notices of Federal Tax Lien Refile that did not expire according to their terms. ECF No. 60-14, Exs. 44, 45.  Those are the operative documents and those support the IRS's foreclosure in this case.[6]

The undisputed material evidence shows the IRS is entitled to foreclose its liens encumbering the Schmidts' property.[7]  Because the IRS has valid liens encumbering the property, the Schmidts' remaining counterclaim to quiet title is denied.

**D.  Sale of the Subject Property**

Pursuant to 26 U.S.C. § 7403, the Government may enforce a lien by commencing an action in the district court, joining all parties with an interest in the property, and requesting a judicial sale of the property.  *See United States v. Rodgers*, 461 U.S. 677, 692-93 (1983) ("§ 7403(c) provides that the district court should 'determine the merits of all claims to and liens upon the property, and, in all

---

[6] On August 1, 2014, the Government recorded a Notice of Lis Pendens, putting others on notice as well that this lawsuit was pending.  ECF No. 14.

[7] Since there are no competing liens, this discussion is only relevant to show that the IRS's perfected liens survived the Schmidts' bankruptcy.  11 U.S.C. § 522(c)(2)(B); *In re Isom*, 901 F.2d 744, 745-46 (9th Cir. 1990).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

cases where a claim or interest of the United States therein is established, may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.'" (emphasis in original omitted)).

There is no dispute that the Schmidts own the subject property, there are no other parties with an interest and the Schmidts have not paid their tax liabilities. Pursuant to 26 U.S.C. § 7403, the Court will order the sale of the Subject Property to satisfy the Schmidts' federal tax debt.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. The United States' Motion for Summary Judgment (ECF No. 60) is **GRANTED in part.**
2. The Defendants' Motion for Summary Judgment (ECF No. 61) is **DENIED.**
3. Promptly after the conclusion of the bench trial, the United States shall file a proposed Order of Sale to effectuate the foreclosure.
4. The remaining issue (the 11 U.S.C. § 523(a)(1)(C) exception to discharge) is set for a bench trial **November 21, 2016 at 8:30 a.m.** All remaining deadlines contained in the Scheduling Order are stricken. The parties shall file trial briefs by **November 14, 2016** and promptly notify

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 18

the Court if the matter settles or Plaintiff chooses to forego seeking a personal money judgment against the Defendants.

5. The United States' Motion for Clarification on Claims Triable to Jury (ECF No. 81) is **GRANTED** as indicated above and Motion to Expedite (ECF No. 80) is **DENIED** as moot.

6. All pending in limine motions and objections to witnesses, exhibits, etc. will be decided at trial.

**IT IS SO ORDERED.**  The District Court Clerk is directed to enter this Order and provide copies to the parties.

**DATED** November 1, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 19