UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>BRUNO W. SCHMIDT and<br>CHARLENE O. SCHMIDT, husband<br>and wife,<br><br>                    Defendants. | NO:  2:14-CV-0237-TOR<br><br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW AFTER<br>BENCH TRIAL |

The Court held a bench trial on December 6, 2016.  Yen J. Tran and Rika Valdman appeared on behalf of the United States of America.  Bruno W. and Charlene O. Schmidt appeared *pro se*.  The Court has reviewed the briefing and the record and files herein, considered the testimony, evidence and the parties' arguments, and is fully informed.

//

//

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 1

# I. PROCEDURAL HISTORY

The United States of America ("Government") filed this action against Defendants Bruno W. Schmidt and Charlene O. Schmidt (collectively, "Schmidts") on July 22, 2014, seeking to reduce federal tax assessments to judgment and to foreclose a federal tax lien against Defendants' real property. ECF No. 1. On December 22, 2014, the Schmidts filed a bankruptcy petition under Chapter 7 in Bankruptcy Court for the Eastern District of Washington. *See* Bankr. E.D. Wash. Case No. 14-04487-FPC-7, ECF No. 1. On January 9, 2015, the Court stayed this case pursuant to the automatic stay provision, 11 U.S.C. § 362. *See* ECF No. 16. On April 1, 2015, the Bankruptcy Court entered a discharge for the Schmidts, thus lifting the automatic stay. *See* ECF Nos. 17, 20; Bankr. E.D. Wash. Case No. 14-04487-FPC7, ECF No. 17, 20; *see* 11 U.S.C. § 362(c)(2)(C).

After the bankruptcy discharge, the Government amended its complaint, adding a request to exclude from discharge the Schmidts' 1998 federal tax liabilities, with the exception of penalties and interest on penalties, under 11 U.S.C. § 523(a)(1)(C), asserting Defendants "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." ECF Nos. 36 at ¶ 48; 50 at ¶ 48. Defendants' Answer asserted numerous affirmative defenses and several counterclaims. ECF No. 39 at ¶¶ 56-199. The Court entertained cross motions for summary judgment (ECF Nos. 60, 61) and granted summary judgment in favor of

the Government on the foreclosure issue[1] and Defendants' affirmative defenses and counterclaims, leaving for trial the sole issue of whether 11 U.S.C. § 523(a)(1)(C) provided an exception to the Schmidts' bankruptcy discharge.  ECF No. 93.

A bench trial was held on December 6, 2016.  The parties stipulated to the admission of numerous exhibits and the Government elicited the testimony of Bruno Schmidt and Charlene Schmidt.  At the end of the Government's case in chief, the Court made a Federal Rule of Civil Procedure 52(c) ruling, which is more fully set forth in this written decision.

## II.    LEGAL STANDARD

Under the bankruptcy code, a debtor can typically discharge personal liability for unsecured debts accrued before the filing of the bankruptcy petition. 11 U.S.C. § 727(b).  An exception to discharge exists where the debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C).  Because bankruptcy is designed to give the debtor a "fresh start[,]" section 727 exceptions are construed "strictly against parties

---

[1]     Pursuant to 11 U.S.C. § 522(c)(2)(B), the full amount of the Government's tax lien, including interest and penalties, encumbers Defendants' real property. The Court provides this additional explanation because its oral comments to Defendants at the end of the trial were not perfectly clear on this point.

objecting to discharge." *In re Retz,* 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *In re Bernard,* 96 F.3d 1279, 1281 (9th Cir. 1996)) (internal quotation marks omitted).

A debtor makes a "fraudulent return" if he knowingly states a falsehood on his tax returns and *specifically intends to avoid federal taxes. See, e.g., Estate of Trompeter v. Comm'r,* 279 F.3d 767, 773 (9th Cir. 2002) (quoting *Conforte v. Comm'r,* 692 F.2d 587, 592 (9th Cir. 1982)). Similarly, a defendant "willfully attempt[s] . . . to evade or defeat" a federal tax if the defendant knows of the duty to pay additional federal income tax, attempts to violate that duty, and *specifically intends to avoid the tax. See*, *e.g.*, *Hawkins v. Franchise Tax Bd. of California,* 769 F.3d 662, 669 (9th Cir. 2014); *Cheek v. United States,* 498 U.S. 192, 201 (1991). As such, both prongs of section 523(a)(1)(C) require the Government to prove by a preponderance of the evidence that the debtor *specifically intended to evade federal taxes known to be owing. Grogan v. Garner,* 498 U.S. 279, 291 (1991) (preponderance standard); *see, e.g., Hawkins,* 769 F.3d at 669; *Maciel v. Comm'r,* 489 F.3d 1018, 1026 (9th Cir. 2006) (citing *Trompeter*, 279 F.3d at 773). This requires negating the defendant's claim of "a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable." *Cheek*, 498 U.S. at 202.

A fact-finder can infer specific intent where certain "badges of fraud" are present, including understatement of income, inadequate or falsified records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealing assets, failure to cooperate with tax authorities, lack of credibility of taxpayer's testimony, sophistication in tax matters, engaging in or attempting to conceal illegal activities, failing to make estimated tax payments, backdating documents, filing false documents with the IRS, and other conduct, the likely effect of which would be to mislead or conceal. *See Bradford v. Comm'r,* 796 F.2d 303, 307 (9th Cir. 1986); *Laurins v. Comm'r,* 889 F.2d 910, 913 (9th Cir. 1989); *In re Griffith,* 206 F.3d 1389, 1396 (11th Cir. 2000). "[M]ost of the cases involve intentional acts or omissions designed to evade taxes, such as criminal structuring of financial transactions to avoid currency reporting requirements; concealing assets through nominee accounts; concealing ownership in assets; and failing to file tax returns and pay taxes." *Hawkins*, 769 F.3d at 669 (internal citations omitted). Notably, "no circuit has held that failure to pay taxes, by itself, constitutes willful tax evasion within the meaning of that clause in § 523(a)(1)(C)." *Id.*

Thus, the only factual dispute at trial was whether the Schmidts had a good faith belief they did not owe taxes and whether they intended to evade taxes by their conduct.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 5

### III.   FINDINGS OF FACT[2]

A.  Background

Bruno and Charlene Schmidt have been married since 1974.  Mr. Schmidt has a graduate degree from a business college in Munich, Germany, that is roughly equivalent to an American business degree in accounting with a minor in computer science.  Mrs. Schmidt was a nun for eight years, and taught throughout this time, and continued to teach thereafter until 1974.  Mrs. Schmidt has a Bachelor's Degree in English with a minor in philosophy from Holy Names University (then Holy Names College), as well as a California Secondary Teacher's credential.  The Schmidts moved to the United States in 1976.

From 1976 through 1979, Mr. Schmidt worked for a Stauffer Chemical as a mainframe programmer; and from 1979 through 1997, Mr. Schmidt worked for Fireman's Fund Insurance Company.  Each year from 1976 to 1997, Mr. Schmidt received a Form W-2 from his respective employer, timely filed the Schmidts' federal income tax returns as married filing jointly, and reported taxable income consistent with the respective Forms W-2.

B.  Taxable Year in Question

In 1998, Mr. Schmidt: (1) was severed as an employee from Fireman's

---

[2]      As recited, these are the Court's findings of fact.

1    Fund, but received a lump-sum compensation of $62,928.44, for which Mr.

2    Schmidt received a Form W-2 for 1998, (2) cashed out his rolled-over IRA account

3    by receiving a distribution of $154,446.50 from Redwood Credit Union

4    ("Redwood"), for which Mr. Schmidt received two corresponding 1099-R forms

5    for 1998; and (3) liquidated the benefits of his pension and annuity (that the

6    Fireman's Fund had purchased for him) by receiving a distribution of $9,122.77

7    from Northern Trust Company ("Northern"), for which Mr. Schmidt received a

8    corresponding Form 1099-R for 1998.

9          Despite receiving all of the relevant forms, the Schmidts failed to timely file

10   their Federal Income Tax Return for 1998 with the Internal Revenue Service

11   ("IRS").  Exhs. 5, 6.  Mr. Schmidt contended that he did not need to file a tax

12   return as the remuneration he received was not "gross income" according to the

13   IRS code and regulations (the "Section 861 argument").  *See* Exh. 6.  He testified

14   that he believed the items that he received were not taxable.  Mr. Schmidt testified

15   that he arrived at this position after researching the law and regulations for almost

16   a year through the use of pamphlets, list serves, websites, email lists, fax-lists,

17   printed news-letters, and conversations with other individuals.  Mr. Schmidt also

18   testified that he visited the law library and online legal sources such as VersusLaw

19   and Westlaw.  He did not consult with an attorney or a tax professional prior to

20   asserting this position.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 7

1    Mr. Schmidt believed that, according to his research, his 1998 income was

2    not derived from a taxable source.  Mr. Schmidt testified that he first began

3    researching the matter after he found out his employer over-withheld what his W-2

4    withholding certificate had authorized (by withholding at a single filing rate with

5    zero exemptions).  He was told that this was corporate policy, and decided to

6    investigate the basis for the policy.  Mr. Schmidt testified that, using his research

7    skills, he discovered ambiguities in the tax code that lead him to further research;

8    and that after more than a year of legal research he ultimately concluded that his

9    income was not derived from a taxable source.  Notably, Mr. Schmidt testified that

10   he was willing to be wrong, and suggested he would have changed his position had

11   he been presented by an authority rather than a general rejection by form letter (the

12   Schmidts requested meetings with an examiner, at least two times before filing,

13   once with the filing, and six times after filing).  Indeed, Mr. Schmidt testified that

14   "one clear sentence would have straightened [him] out," and that he was willing to

15   do whatever was necessary to get the issue sorted out.

16       C.  IRS's Initial Action; Resulting Correspondence

17       The IRS sent Mr. Schmidt Form Letter CP-515 dated February 21, 2000,

18   informing him that the IRS had not received his Form 1040 for the taxable year

19   1998.  Exh. 5.  The letter requested an explanation if Mr. Schmidt believed the law

20   did not require him to file a tax return.  *Id.*  Mr. Schmidt sent a letter dated April

10, 2000 in response to the IRS, providing that he did not file a tax return for 1998 because "the remuneration I received in 1998 was not 'Gross Income' pursuant to 26 USCA § 61 et als." Exh. 6 at 2. ("I have determined in good faith and with due diligence that, pursuant to 26 USCA § 61 et als. I had no gross income . . ."). The letter also asserted Mr. Schmidts' position that "the Forms W-2 and 1099 received by the IRS for the year 1998 are factually incorrect", because "the remuneration alleged to be 'Gross Income' on said Forms does NOT represent gross income pursuant to 26 CFR § 1.861-8 et als." Exh. 6 at 1. The letter further requested that the IRS produce information supporting its position, and requested the IRS provide instructions for correcting what Mr. Schmidt asserted were false W-2 and 1099 forms. *Id.*

The IRS sent Mr. Schmidt a form 3175 letter dated May 5, 2000, in an apparent response. Exh. 7. The letter did not directly address Mr. Schmidt's contentions, but rather generally informed Mr. Schmidt that the IRS cannot change the tax laws, and that "Federal courts have consistently ruled against the argument you have made. Therefore, we will not respond to future correspondence concerning these issues." *Id.*

On May 12, 2000, Mr. Schmidt sent a letter to the IRS seeking answers and as a follow-up letter to all the other letters for which the IRS had not responded.

Mr. Schmidt sent that same letter to his Congressman and Senators asking them to intercede on his behalf to get some reasonable responses from the IRS.

Mr. Schmidt sent another letter dated June 2, 2000 to the IRS that reiterated that he had no taxable income from a taxable source for the year 1998 and called to attention the IRS's failure to respond to Mr. Schmidt's previous requests.  Exh. 8 at 1-2.  In the letter, Mr. Schmidt notified the IRS that he "will be seeking [his] rightful Examination Interview pursuant to 26 USC §7521, 26 CFR § 601.105, and IRM § 4253.4[.]"  Exh. 8 at 1.  Notably, Mr. Schmidt wrote: "I hereby assever under the penalties of perjury pursuant to 26 U.S.C. § 6065 that I intend to fully comply with whatever filing requirement I am subject to once the IRS provides me with [the items requested.]"  Exh. 8 at 1 (emphasis original).

D.  The Schmidts File a Tax Return; Subsequent Correspondence

Mr. Schmidt sent letter dated August 15, 2000 to the IRS, once again raising Mr. Schmidt's argument that he had no gross income for the taxable year 1998, and again highlighting the IRS's failure to adequately respond to previous letters.  Exh. 9 at 1-2.  Included with this letter, the Schmidts submitted a Form 1040 Income Tax Return (reporting all relevant income, but not as taxable income) and supporting documentation (including all relevant W-2 and 1099-R forms for the taxable year 1998).  Exh. 9 (requesting a refund of the tax withholdings).  Notably, the letter includes the following: "In the event that the IRS disagrees with my contentions of

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 10

factual nature, which are verified by me pursuant to 26 U.S.C. § 6065, and/or refuses to process my above requested refund in a timely fashion, I hereby give Notice of Demand for my Examination Interview and assert and reserve all my rights[.]" Exh. 9 at 2.

With the Form 1040, Mr. Schmidt included a letter he sent to the Fireman's Fund dated May 26, 2000, requesting it correct the Form W-2 asserting he had gross income in 1998. Exh. 9 at Bates no. 282. Similarly, Mr. Schmidt included a letter he sent to Redwood dated August 3, 2000 and a letter to Northern dated August 3, 2000 asserting the 1099-R forms needed to be corrected because the distributions did not constitute a taxable amount pursuant to 26 U.S.C. §§ 61 et seq. and 861 et seq. *Id*. at Bates no. 288, 297. None of the businesses changed their previously issued forms.

The IRS Fresno office sent a letter to Mr. and Mrs. Schmidt, dated October 3, 2000, stating the IRS has determined "that the information you sent in is frivolous and your position has no basis in law . . . . Therefore, we will not respond to future correspondence concerning these issues." Exh. 10 at 1. The letter threatens imposition of a frivolous return penalty, but does not address the Schmidts' request for an Examination Interview. *See* Exh. 10.

Afterwards, Mr. Schmidt received a letter from the IRS Ogden office indicating that they had no record of his tax return. Consequently, on April 15,

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 11

2001, the Schmidts sent another letter to the IRS, including a replacement Form 1040 which was materially the same as the prior return. Exh. 11. The Schmidts' cover letter highlighted that the IRS had not responded to four prior letters the Schmidts sent and explained that the original Forms W-2 and 1099 were not attached as they were included with the prior filing. Exh. 11 at 2.

On September 3, 2001, the IRS Ogden office sent the Schmidts proposed changes to the Schmidts' 1998 income tax return consistent with the view that all the stated income was taxable. Exh. 12. On September 27, 2001, the Schmidts responded by letter challenging the proposed changes and explaining the remuneration received was not "gross income" according to the IRS code and regulations as set forth on Form 8275, included within the packet of information submitted. Exh. 12 at 1, Bates no. 452-53. In the letter, the Schmidts again demanded an Examination Interview to discuss their contentions. Exh. 13 at 2.

On October 19, 2001, the IRS sent a letter to the Schmidts reasserting the validity of its proposed changes. Exh. 14. The letter does not mention the Schmidts' request for an Examination Interview, nor does it specifically address any of the Schmidts' contentions. *Id.* Rather, the letter generally states that the income tax laws are constitutional and that the Schmidts "will receive a Notice of Deficiency in the near future." *Id.* On November 9, 2001, the IRS sent a Notice of

1  Deficiency informing the Schmidts of the asserted tax liabilities and of the

2  Schmidts' right to petition the Tax Court or seek Taxpayer Advocate Assistance.

3  Exh. 15 at 1-2.  On November 29, 2001, the Schmidts sent a letter to the Taxpayer

4  Advocate for the Ogden Service center requesting help, but to no avail.  Exhs. 16,

5  17.

6      This back-and-forth between the IRS and the Schmidts continued on and off

7  for several years, and the IRS eventually filed a lien on the Schmidts' real property

8  and residence for the amount of taxes due.  *See*, *e.g.*, Exhs. 18-27. [3]  Throughout

9  this time and until the end of 2003, the Schmidts continued to assert the Section

10  861 argument, and continually asked for a meeting with an examiner.  Finally, in

11  October 2003, the IRS sent the Schmidts a letter with three court cases addressing

12  the Section 861 issue.  Exh. 27.  Thereafter, Mr. Schmidt ceased asserting his

13  Section 861 argument.

14      Mr. Schmidt testified that he changed positions because the Section 861

15  argument was not viable, even if he believed it were still factually and legally

16  correct, since the IRS included the Section 861 argument in its 2006 (or 2004)

17

18  [3]      A complete recitation of all the correspondence between the Schmidts and

19  the IRS is unnecessary, as the recitation of the prior correspondence accurately

20  reflects the crux of the relevant dispute.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 13

published list of frivolous arguments.  When questioned about why Mr. Schmidt did not amend the return after this change in position, Mr. Schmidt testified that it was too late, as he had been told the 1040 tax form cannot be amended once a notice of deficiency is issued.

Mr. Schmidt also testified that he prepared the tax returns (they were his "chore"), and that Mrs. Schmidt glanced at the returns and signed them, but did not take an active role in preparing the returns.

Mrs. Schmidt testified that Mr. Schmidt prepared the tax returns for all the relevant years, and that she would look over them, but not in any detail (her "chores" pertained mostly to taking care of the animals).  Mrs. Schmidt further testified that she believed the tax returns (including the return for the year 1998) reported their tax liabilities correctly, relying on her unconditional trust in her husband.  Mrs. Schmidt testified that, although she could not recall any specifics of the events given the passage of time and her reliance on her husband to address the matter, she was likely generally aware of all the relevant correspondences, noting that her husband likely summarized the letters and his position to her.  Mrs. Schmidt further testified that her and her husband never disagreed with the law, just with the IRS's interpretation of the law and their way of handling the procedures.

//

**IV.    EVALUATION OF THE EVIDENCE AND CONCLUSIONS OF LAW**

Under Federal Rule of Civil Procedure 52(c), "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue . . . . A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)."  At the bench trial, the Government was fully heard on the only remaining issue (exception to discharge), but it did not sustain its burden of proof.

The Government bears the burden of proving by a preponderance of the evidence that the Schmidts either "made a fraudulent return" or "willfully attempted in any manner to evade or defeat" their 1998 income taxes.  11 U.S.C. § 523(a)(1)(C); *Grogan,* 498 U.S. at 291.  Both prongs require a showing that the Schmidts acted with the specific intent to avoid paying income taxes.  *Hawkins,* 769 F.3d at 669; *Trompeter,* 279 F.3d at 773.  The Schmidts do not now dispute that their 1998 return understated their income.[4]  The central remaining issue is whether the Schmidts acted with an intent to evade taxes they believed were owed.

---

[4]    The Schmidts dropped their original position after the IRS officially labeled the Section 861 tax argument as frivolous.

The Court now turns to an evaluation of the evidence, the credibility of the witnesses, and the law.  As discussed further below, after considering the attitude and demeanor of the witnesses, as well as the documentary evidence, the Court finds that the Government has not carried its burden of showing that the Schmidts acted with specific intent to evade their taxes.

### A. The Government Has Not Met Its Burden to Prove that Defendants Made a Fraudulent Return with Specific Intent to Evade Their Taxes

The Government bears the burden of proving by a preponderance of the evidence that the Schmidts filed a fraudulent return, not one that was just merely inaccurate.  A fraudulent return is one that is willfully filed and known to be false in any material manner.  *See Sansone v. United States*, 380 U.S. 343, 352 (1965) (interpreting 26 U.S.C. § 7207); *Conforte*, 692 F2d at 592 ("fraud is intentional wrongdoing on the part of the taxpayer with the specific intent to avoid a tax known to be owing."). The Government also bears the burden of proving by a preponderance of the evidence that the Schmidts specifically intended to evade federal taxes when filing their tax return.  *See, e.g., Hawkins,* 769 F.3d at 669.  A fact-finder can infer specific intent where certain badges of fraud exist.  *See, e.g., Bradford,* 796 F.2d at 307.  Weighing all the evidence, the Government has not carried its burden of proving that the Schmidts willfully filed a false return with specific intent to evade their taxes.

1       Rather than try to hide their income, the Schmidts attached their W-2 Form

2   and their 1099-R Forms to their tax return.  Exh. 9.  These forms were not altered

3   in any way, and the Schmidts did not otherwise try to conceal the income that was

4   reported to them.  While it is true the Schmidts made an argument for no tax

5   liability, filling out a return and asserting a position that you do not owe income

6   tax while including a legal explanation and all relevant information does not

7   constitute a fraudulent return.  Notably, it appears the IRS took the exact

8   information the Schmidts provided and after an examination, they were assessed

9   the amount of taxes from precisely the forms the Schmidts provided to the IRS in

10  their tax return.

11      Admittedly, the Schmidts are both college educated, but have no special

12  training in tax matters.  Although the Schmidts paid taxes consistent with the form

13  W-2 for each year from 1976 to 1997 and changed course in 1998, there is a valid

14  explanation for the change in position, as Mr. Schmidt credibly testified that the

15  change in position resulted from personal investigation into the matter, all of which

16  occurred after filing in 1997.  Moreover, both Mr. and Mrs. Schmidt credibly

17  testified that they believed the taxes were not due.

18      The actions taken by the Schmidts bolster their credibility, as the Schmidts

19  wrote numerous correspondence asserting their position, all while they continually

20  requested an IRS Examination Interview to discuss the matter (at least nine times

according to Mr. Schmidt's testimony).  Mr. Schmidt also contacted Fireman's Fund, Redwood, and Northern and requested a change consistent with his position. The Schmidts further sought help from the Taxpayer's Advocate for the Ogden Service Center, and even wrote letters to their Congressman and Senators for assistance.

Importantly, at trial and in numerous correspondence, the Schmidts demonstrated they were willing to change their position if a review with an examiner was granted, as opposed to the general denials that did not specifically address the Schmidts' contentions. *See*, *e.g.*, Exh. 8 ("I hereby assever under the penalties of perjury pursuant to 26 U.S.C. § 6065 that I intend to fully comply with whatever filing requirement I am subject to once the IRS provides me with [the items requested].") (emphasis original); and the IRS's stock response, Exhs. 7, 10 ("Therefore, we will not respond to future correspondence concerning these issues.").  This contention was proven true when the Schmidts changed their position years later when the IRS officially labeled their argument as frivolous (according to Mr. Schmidt, he believed his position could still be correct but considered the argument not viable once the IRS officially published its holding on the applicability of Section 861).

The Schmidts did not self-assess a tax, but merely not assessing a tax against one's self does not create a fraudulent return.  Ultimately, the Schmidts were

credible in their testimony that they personally believed the income was not

derived from a taxable source. The Government has not met its burden to establish

otherwise.

### B. The Government Has Not Met Its Burden to Prove that Defendants Willfully Attempted in any Manner to Evade or Defeat their Taxes

The second prong that the Government seeks to prove is that the Schmidts

attempted to evade or defeat their taxes.[5] The sum total of the Government's

evidence and the basis for arguing that the Schmidts attempted to evade or defeat

their taxes is the following:

1. The Schmidts filed a 1998 tax return with zeros filled out for gross income;
2. The Schmidts purchased real property in the year 2000;
3. The Schmidts were notified thereafter of a tax liability; and
4. The Schmidts refused to pay, despite what the Government terms as the ability or access to disposable assets.

Notably, the Court did not receive any evidence of the typical badges of fraud

associated with an attempt to evade or defeat a tax. There was no evidence of false

or altered documents, concealment of assets, making false bookkeeping entries,

destruction of records, straw transfers or "any kind of conduct, the likely effect of

---

[5]      This is similar to the issue above, but the relevant timeframe extends beyond

the strict time of filing the return.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER BENCH TRIAL ~ 19

which would be to mislead or conceal." *See Spies v. United States*, 317 U.S. 492, 499 (1943).  For a period of time, the Schmidts failed to file their 1998 tax return timely, but after this was brought to their attention, they filed a return.  Exh. 9.  This Court finds the return was not fraudulent, as it disclosed all the material information and merely argued, based on the statutes and regulations, that the remuneration was not taxable income.

The Schmidts testified that they sold their property in California and moved to Washington, reinvesting in the property which later became the subject of the IRS's tax lien.  This purchase occurred in August 2000.  Exh. 44.  This open and notorious move and reinvestment do not demonstrate a badge of fraud.  The Schmidts notified the IRS about their change of address and openly recorded their Statutory Warranty Deed to the property.  *Id*.  The mere purchase of property is not equivalent to an intent to evade tax.  *Hawkins*, 769 F.3d at 669 (even the "mere showing of spending in excess of income is not sufficient to establish the required intent to evade tax").

The IRS did notify the Schmidts of their tax liability in 2001 (Exh. 15), for which the Schmidts neither appealed to the Tax Court nor did they pay the tax and appeal to a District Court.  However, the Schmidts did avail themselves of other, offered avenues for relief, such as the Taxpayer Advocate for which they were continually rebuffed.

1    Finally, the Government asserts that the Schmidts have refused to pay their

2    tax obligation, knowing that it is due.  The Schmidts testified that they retired, are

3    living on a fixed income and that they no longer have the ability to pay the tax.  The

4    bankruptcy filing seems to confirm that the Schmidts are cash poor.  However, even

5    the willful failure to pay taxes, by itself, is not evasion.  *Hawkins*, 769 F.3d at 669

6    ("no Circuit has held that living beyond one's means alone constitutes willful tax

7    evasion, and no circuit has held that failure to pay taxes, by itself, constitutes willful

8    tax evasion within the meaning of that clause in § 523(a)(1)(C).").

9    At bottom, this case is similar to *Hawkins* and *Spies* where the Ninth Circuit

10    and the Supreme Court considered the difference between the misdemeanor of

11    willfully failing to pay a tax or file a timely return with the felony of willfully

12    attempting to evade or defeat a tax or its payment.  In those cases, both Courts

13    rejected the Government's contention that a willful failure to file a return, coupled

14    with a willful failure to pay the tax, constituted a willful attempt to evade or defeat a

15    tax.  Rather, both Courts interpreted the statutes as requiring some "willful

16    commission in addition to willful omissions."  *Hawkins*, 769 F.3d at 668 (applying

17    the logic of *Spies* to § 523(a)(1)(C)).

18    As such, the Government has failed to establish any badges of fraud, but more

19    importantly, has failed to show by a preponderance of the evidence that the

20    Schmidts willfully attempted to evade or defeat their 1998 taxes.

## V.  CONCLUSION

The Court finds that (1) Mr. Schmidt and Mrs. Schmidt are fully credible in their testimony to the Court; (2) the Schmidts had a good faith, firm belief that they did not owe taxes on the 1998 income; and (3) the Government has not proved by a preponderance of the evidence their specific intent to file a fraudulent return and has not proved their specific intent to evade or defeat their 1998 income taxes.

These findings are supported by the numerous correspondence in evidence, including Mr. Schmidt's good faith request that he have a taxpayer conference, continually asking for the IRS to meet with him and explain its position (Mr. Schmidt testified that he asked to meet with an examiner two times before filing, at the time of filing, and six times after filing; and requested meeting with a revenue agent five times), only to be rebuffed by letters saying the IRS will not discuss the matter.

Therefore, the Court will rule in favor of the Schmidts on this issue.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's claim for exception to bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(1)(C) is **DENIED.**  Plaintiff's claim for a personal judgment against the Defendants for their tax liability for the tax year 1998 is **DISMISSED.**

2. In accordance with the Court's Order on Cross Motions for Summary Judgment (ECF No. 93), the federal tax liens against Bruno W. Schmidt and Charlene O. Schmidt which encumber their real property are hereby foreclosed. The property will be ordered sold and the proceeds are to be distributed as follows: first to the Internal Revenue Service for costs of sale; second to Stevens County for outstanding property taxes according to the stipulation between Stevens County and the United States filed on May 5, 2016 (ECF No. 53); third to the IRS for the Schmidts' unpaid federal income tax liabilities for tax year 1998; and fourth to the Schmidts if there are any remaining proceeds.

3. Within 20 days of this Order and entry of Judgment, the United States shall submit a proposed Order of Sale.

**IT IS SO ORDERED.** The District Court Clerk is directed to enter this Order and Judgment accordingly (incorporating these rulings and the Court's Order on Cross Motions for Summary Judgment (ECF No. 93)) and provide copies to the parties.

**DATED** December 14, 2016.



THOMAS O. RICE
Chief United States District Judge